IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARMISA D. JACKSON, | : | |
| Plaintiff, | : | |
| vs. | : | CA 20-0398-MU |
| ANDREW M. SAUL, Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Carmisa D. Jackson brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 18 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 20 (order of reference)). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the oral arguments of the parties on June 29, 2021, the Court concludes that the Commissioner's decision denying benefits should be reversed and remanded for further consideration not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 18 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for
(Continued)

## I. Procedural Background

Plaintiff filed an application for supplemental security income benefits on or about October 26, 2017, alleging disability beginning on December 15, 2013. (*See* Doc. 13, PageID. 188-94). Jackson later amended her disability onset date to October 24, 2017, the protective filing date. (*Id.,* PageID. 199). Jackson's claim was initially denied on January 19, 2018 (*id.,* PageID. 68 & 72-77) and, following Plaintiff's February 14, 2018 request for a hearing before an Administrative Law Judge ("ALJ") (*id.,* PageID. 84-86), a hearing was conducted before an ALJ on May 2, 2019 (*id.,* PageID. 81-103). On November 22, 2019, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to supplemental security income benefits. (*Id.,* PageID. 65-77). More specifically, the ALJ determined at the fifth step of the five-step sequential evaluation process that Jackson retains the residual functional capacity to perform medium work, with limitations, and can perform those medium jobs identified by the vocational expert ("VE") during the administrative hearing (*see id.,* PageID. 76; *compare id. with* PageID. 99-100). On January 21, 2020, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID. 185-86); the Appeals Council denied Jackson's request for review on July 8, 2020 (*id.,* PageID. 51-53). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

Plaintiff alleges disability due to hypertension, back pain, obesity, and borderline intellectual functioning. The Administrative Law Judge (ALJ) made the following relevant findings:

> **2. The claimant has the following severe impairments: hypertension, back pain, obesity, borderline intellectual functioning (BIF), and depression (20 CFR 416.920(c)).**
>
> . . .
>
> **3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that she can perform only simple work; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme temperatures and hazards like machinery and unprotected heights.**
>
> . . .
>
> **5. The claimant is unable to perform any past relevant work (20 CFR 416.965).**
>
> . . .
>
> **6. The claimant was born on November 15, 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the amended alleged onset date and date the application was filed (20 CFR 416.963).**
>
> **7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).**
>
> Although the claimant completed high school, she testified to receiving a certificate of attendance instead of a regular high school diploma.

**8.** **Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**9.** **Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).**

. . .

**10.** **The claimant has not been under a disability, as defined in the Social Security Act, since October 24, 2017, the amended alleged onset date and date the application was filed (20 CFR 416.920(g)).**

(Doc. 13, PageID. 67, 71, 75, 75-76 & 77) (emphasis in original).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden at the fourth step of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

4

the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Jackson advances two reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ failed to adequately evaluate whether she had significant deficits in adaptive functioning that began prior to the age of 22 so as to meet the requirements of Listing 12.05(A) or (B); and (2) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence (and he did not propound a proper hypothetical to the vocational expert) because he failed to assign any limitations in his RFC determination (and in his principal hypothetical to the VE) regarding her limited ability to read nor did he include in that determination (and the hypothetical to the VE) Jackson's recognized moderate limitations in her ability to understand, remember and apply information and in her ability to concentrate, persist and maintain pace. (*See generally* Doc. 14). Because the Court agrees with Plaintiff's second assignment of error, there is no need to address the first assignment of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").[4]

As indicated above, RFC comes into play at the at the fourth and fifth steps of the sequential evaluation process. *See* 20 C.F.R. § 416.920(e) ("We use our residual

---

[4] Of course, on remand, Plaintiff's counsel can certainly present her Step 3 concerns to the ALJ.

functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work . . . and at the fifth step of the sequential evaluation process . . . to determine if you can adjust to other work . . . ."). In determining a claimant's RFC, which is "'that which an individual is still able to do despite the limitations caused by his or her impairments[,]'" the ALJ "considers all the evidence in the record[.]" *Washington v. Social Sec. Admin., Commissioner,* 503 Fed.Appx. 881, 882-83 (11th Cir. Jan. 15, 2013), quoting and citing *Phillips, supra,* 357 F.3d at 1238. Moreover, at the fifth step of the sequential evaluation process, the Commissioner must establish that a significant number of jobs exist in the national economy that the claimant can perform given her RFC, age, education, and work experience. *See, e.g., Bellew v. Acting Commissioner of Social Sec.,* 605 Fed.Appx. 917, 930 (11th Cir. May 6, 2015) (citation omitted). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert." *Winschel v. Commissioner of Social Sec.,* 631 F.3d 1176, 1180 (11th Cir. 2011), citing *Phillips, supra,* 357 F.3d at 1239-1240. Here, of course, in finding that Jackson could perform other work existing in significant numbers in the national economy (*see* Doc. 13, PageID. 76-77), "the ALJ relied exclusively on the testimony of a vocational expert[.]" *Dial v. Commissioner of Social Sec.,* 403 Fed.Appx. 420, 421 (11th Cir. Nov. 18, 2010). "'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Winschel, supra,* 631 F.3d at 1180, quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam); *see also Dial, supra,* 403 Fed.Appx. at 421 (where ALJ failed to include all of the claimant's

7

"employment limitations in the hypothetical questions posed to the VE . . ., the VE's testimony did not constitute substantial evidence upon which the ALJ could rely."). "However, the ALJ is 'not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.'" *Washington, supra,* 503 Fed.Appx. at 883, quoting *Crawford, supra,* 363 F.3d at 1161.

After reviewing the record, the Court concludes that Jackson's argument that the ALJ failed to include all of her limitations in his RFC determination and in the principal hypothetical question[5] posed to the VE[6] is meritorious. Here, neither the ALJ's mental RFC assessment nor his principal hypothetical to the VE made express or implicit mention of any limitations regarding Jackson's reading ability, despite the ALJ's ready acceptance of Plaintiff's testimony that she cannot read a newspaper and is limited to reading "smaller words[.]" (Doc. 13, PageID. 74). In other words, contrary to the Defendant's position (*see* Doc. 15, PageID. 396), the ALJ's analysis of Plaintiff's reading testimony (*see id.* ("Although she testified to not being able to read a newspaper, she did testify to being able to read smaller words, and has indicated

---

[5] To be sure, the ALJ's second hypothetical question to the VE "added" to the principal hypothetical the additional limitations of **no reading** and no driving (Doc. 13, PageID. 100) and in response to this hypothetical the VE testified that all three medium, unskilled jobs he identified in response to the principal (or first hypothetical) (*see id.,* PageID. 99), would be eliminated (*id.,* PageID. 100). The VE later made clear that all the jobs he identified (namely, hand packager, dining room attendant, and retail bagger), and even other jobs (like assemblers), require some level of reading (*see id.,* PageID. 101). However, the ALJ's principal (or first) hypothetical posed to the VE, which included all limitations he incorporated into his RFC assessment, contains no reading limitations (*see id.,* PageID. 99), and the Defendant certainly makes no argument in brief that the limitation to "simple work" took into account Jackson's reading limitations (*see* Doc. 15, PageID. 396).

[6] Again, the principal (or first) hypothetical posed to the VE contains all the limitations incorporated into the ALJ's RFC assessment. (*Compare* Doc. 13, PageID. 99 *with id.,* PageID. 71).

having the ability to read, even if not being a good reader.")) does nothing to establish that Plaintiff has no reading limitations and, indeed implicitly (if not explicitly) establishes that Plaintiff is limited to reading "smaller words" and that she cannot read a newspaper. (*See id.*). And given the ALJ's acceptance of Jackson's testimony that she cannot read a newspaper and can read only "smaller words," it was incumbent upon the ALJ to, at the very least, include these reading limitations in his RFC determination and the hypothetical posed to the VE. *See, e.g., William C. v. Commissioner, Social Sec. Admin.,* 2019 WL 4450689, *7 (N.D. Ga. Sept. 17, 2019) (the ALJ's RFC assessment included no reading requirements other than "very short words."); *cf. Williams v. Colvin,* 2013 WL 12166327, *4 (M.D. Fla. Sept. 23, 2013) (ALJ's hypothetical to the VE included the limitation that any work performed by Plaintiff require "'only the reading of very basic instructions, if any[.]'"). This conclusion is particularly appropriate in this case given the Plaintiff's low and valid IQ tests scores (*see* Doc. 13, PageID. 363 ("Carmisa Jackson is a 39-year-old black female who scored in the mild range of mental retardation on this administration of the WAIS IV. This score was felt to be a valid assessment of her current level of intellectual functioning as there were no distracting factors during the testing session and she appeared to put good effort into her work.")) and her inability to spell "world" and "earth" (*see id.,* PageID. 344). In other words, given Plaintiff's IQ test results and spelling difficulties, it should come as a surprise to no one, particularly the ALJ who heard her case, that Plaintiff's reading ability is limited and that her reading limitations should have been presented to the VE.[7] The ALJ's failure to

---

[7] The VE testimony in this case is particularly curious to this Court since the ALJ did pose a hypothetical that included a limitation of "no reading," though Plaintiff never testified that she was totally unable to read; instead, Plaintiff maintained she could not read a newspaper (Continued)

9

acknowledge Plaintiff's reading limitations in his RFC assessment and in his hypothetical to the VE makes it impossible for this Court to find that Jackson can perform the three medium jobs identified by the VE, since all of those jobs require some level of reading (Doc. 13, PageID. 101), more specifically, the ability to recognize the meaning of 2,500 two or three syllable words, the ability to read at the rate of 95-120 words per minute, and the ability to compare similarities between words and between series of numbers, see DOT #311.677-018 (dining room attendant); DOT # 920.587-018 (hand packager); DOT # 920.687-014 (bagger). In short, the ALJ's fifth step determination in this case is not supported by substantial evidence and, therefore, this matter must be remanded to the Commissioner for further consideration not inconsistent with this decision.[8]

---

but could read smaller words. A limitation to reading "smaller words," as well as an inability to read a newspaper, would have been appropriate limitations in this case.

[8] And since this case is due to be remanded because of the ALJ's failure to include in his principal hypothetical to the VE the appropriate reading limitations he recognized (that is, "smaller words" and an inability to read the newspaper), on remand the ALJ should also address whether his mental RFC "assessment" of "simple work" (Doc. 13, PageID. 71) expressly and/or implicitly accounts **both** for Jackson's moderate limitation in concentration, persistence and pace **and** her moderate limitations in her ability to understand, remember, and apply information, see Pinckney v. Commissioner of Social Sec., 2021 WL 1218486, *2 (11th Cir. Mar. 31, 2021) ("Understanding, remembering, or applying information refers to the claimant's abilities to learn, recall, and use information to perform work activities, e.g., understanding and learning terms, instructions, and procedures; following one- or two-step oral instructions to carry out a task; and describing work activity to someone else."). The undersigned is certainly aware of those cases in which courts have determined that an RFC restriction to simple work (or the like) adequately addresses or accounts for moderate limitations in concentration, persistence and pace where "the medical evidence demonstrates that the claimant can perform such work[,]"compare, e.g., William C., supra, at *14, citing Winschel, supra, 631 F.3d at 1080-81; Lee v. Commissioner of Social Sec. Admin., 551 Fed.Appx. 539, 540-41 (11th Cir. Jan. 8, 2014); and Neefe v. Commissioner of Social Sec., 531 Fed.Appx. 1006, 1007 (11th Cir. Sept. 27, 2013) with, e.g., Camarillo v. Colvin, 2013 WL 4789244, *7-8 (M.D. Fla. Sept. 9, 2013) (finding ALJ's hypothetical question to the VE—limiting the claimant to simple and repetitive work with reading/writing limitations at the sixth grade level—"implicitly accounted for the limitation [in concentration, persistence, and pace] when considered in the light of the medical record which supports that despite such moderate limitation in concentration, persistence and
(Continued)

10

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g),[9] see *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 2nd day of July, 2021.

                                        s/P. Bradley Murray
                                        **UNITED STATES MAGISTRATE JUDGE**

---

pace, Plaintiff could perform simple and repetitive work on a sustained basis.") (footnote omitted); however, the undersigned is unaware of any caselaw establishing that an RFC restriction to simple work accounts **both** for moderate limitations in concentration, persistence and pace **and** moderate limitations in the ability to understand, remember, and apply information. Therefore, the ALJ need address this issue on remand and perhaps, simply pose a more comprehensive and detailed hypothetical to another VE.

      Finally, while a bit off topic, it would behoove the ALJ on remand to identify whether there are any additional physical limitations relative to Plaintiff's abilities to stoop, kneel, crouch, crawl, reach, handle and finger.

      [9]      Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is appropriate under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."